**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:(619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON ROSALES, on behalf of himself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE HART GROUP, LLC,<br><br>Defendant. | Case No.:<br><br>CLASS ACTION<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227 *et seq.***<br><br>DEMAND FOR JURY TRIAL |

**INTRODUCTION**

Plaintiff Aaron Rosales ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant The Hart Group, LLC ("The Hart Group" or "Defendant"), in negligently, and/or willfully contacting Plaintiff through text messages on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*, ("TCPA"), thereby invading Plaintiff's privacy.  Plaintiff alleges as follows upon personal knowledge as to his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1.      The TCPA strictly forbids nuisance text messages exactly like those alleged in this Complaint – intrusive text messages to private cellular phones, placed to numbers obtained without the prior express consent of the recipients.

2.      In a misguided effort to solicit new employees, The Hart Group routinely contacts individuals through mass text messaging with automatic telephone dialing equipment.  However, The Hart Group regularly sends these text messages to cellular telephones, without consent, let alone prior express written consent, in violation of the TCPA.

3.      The Hart Group's violations caused Plaintiff and members of the Class to experience actual harm, included aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing text message calls, as well as the violation of their statutory rights.

4.      Plaintiff and members of the Class suffered a concrete injury in fact, whether tangible or intangible, that is directly traceable to Defendant's conduct, and is likely to be redressed by a favorable decision in this action.

1

5.     Plaintiff seeks an injunction stopping The Hart Group from sending unsolicited text messages, as well as an award of statutory damages under the TCPA, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

6.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 751-53 (2012).

7.     The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant has its principal place of business located at 2140 West Grant Line Road, Tracy, California 95377, Defendant transacts significant amounts of business within this District, and the conduct and events giving rise to the claims occurred in this District.

## PARTIES

8.     Plaintiff Aaron Rosales is, and at all times mentioned was, a resident of the State of California, County of Manteca. He is, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. § 153 (39).

9.     Defendant The Hart Group, LLC is a California limited liability company, headquartered in Tracy, California and is a "person" as defined by 47 U.S.C. § 153 (39).

## THE TELEPHONE CONSUMERS PROTECTION ACT OF 1991 ("TCPA") 47 U.S.C. §§ 227 *et seq.*

10.     In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*

11.    The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."  Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]  As recognized by the Federal Communication Commission ("FCC") and the Courts, a text message is a call under the TCPA.  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

12.    According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

13.    One of the most bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for transmission and receipt of short text messages to and from wireless telephones.

14.    SMS text messages are directed to a wireless device through a telephone number assigned to the device.  When an SMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received.  Because wireless telephones are carried on their owner's person, SMS text message are received virtually anywhere in the world.

---

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] *In Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 (2003) ("2003 TCPA Order").

*Rosales v. The Hart Group, LLC*
CLASS ACTION COMPLAINT

15.     Unlike    more    conventional    advertisements,    SMS    message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

16.     Moreover, the transmission of an unsolicited SMS text message to a cellular device is distracting and aggravating to the recipient; intrudes upon the recipient's seclusion; wastes a quantifiable amount of available data on the recipient's cellular device, thereby reducing its data storage capacity; temporarily reduces the available computing power and application processing speed on the recipient's device; diminishes the available battery power which shortens the battery life; and requires expending a quantifiable amount of energy (electricity) to recoup the battery power lost as a result of receiving such a message.

17.     The TCPA makes it "unlawful for any person within the United States ... (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... (iii) to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

18.     "A person or entity" can bring a claim to recover the greater of actual damages or $500 for a violation of § 227(b)(1)(A)(iii). *Id.* § 227(b)(3). A court may award treble damages for a willful or knowing violation. *Id.*

19.     The TCPA defines "automatic telephone dialing systems" (ATDS) as follows: (1) The term 'automatic telephone dialing system' means equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. *See* Pub. L. No. 102-243, § 227, 105 Stat. 2394, 2395.

20.     "[T]he statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a "random or sequential number generator,"

4

but also includes devices with the capacity to dial stored numbers automatically." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018).

21.    Prior express consent is an affirmative defense on which Defendant bear the burden of proof.  The type of consent required depends on the content of the message.  If the message contains advertising or is telemarketing, the sender must have secured, prior to sending the message, the signature of the recipient in a written agreement that includes several specified disclosures. *See* 47 C.F.R. § 64.1200(f)(8).

22.    As of October 16, 2013, express **written** consent is required to make any such telemarketing calls.[4] The express written consent must be signed and be sufficient to show the consumer received clear and conspicuous disclosure of the significance of providing consent and must further unambiguously agree to receive future phone calls.[5]

## COMMON FACTUAL ALLEGATIONS

23.    The Hart Group is a provider of supplemental life and health insurance benefits for labor unions, credit unions and associations.  In an attempt to grow its business, The Hart Group regularly recruits persons to join its company as a customer service and benefit representatives to sell supplemental life and health insurance.

24.    Unfortunately, The Hart Group often places text message calls to persons without having the necessary prior express written consent to do so in violation of the TCPA.

25.    The Hart Group places these unsolicited text message calls using equipment that has the capacity to store or produce telephone numbers, and to dial such numbers, without any need for human intervention.

---

[4] *In Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1837 ¶ 18, 1839 ¶ 20, 1858 ¶ 71 (2012) ("2012 FCC Order").

[5] 2012 FCC Order at 1844 ¶ 13.

5

26.     These unsolicited text message calls placed to wireless telephones were placed *via* an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) and by using "an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227 (b)(1)(A), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place text message calls to consumers' cellular telephone.

27.     The TCPA was intended to give individuals control over how and where they receive calls and text messages.  When The Hart Group places the text message calls to consumers without their consent, it fails to address or respect the limitations imposed by the TCPA.  In doing so, it takes control away from the consumers and violates both the spirit and the letter of the TCPA.

28.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute.

## FACTS SPECIFIC TO PLAINTIFF

29.     On or around October 23, 2019, Plaintiff began receiving unsolicited text messages from The Hart Group to his wireless phone ending in the number 6625, for which Plaintiff provided no consent to call or text, in an attempt to solicit his employment.

30.     Defendant has utilized the SMS Code 981-99 to send promotional text messages to Plaintiff.  This number is owned or leased by The Hart Group.

31.     The promotional text messages The Hart Group sent to Plaintiff on his mobile telephone were soliciting Plaintiff for potential employment.

32.     Plaintiff received unsolicited text messages from Defendant on, at least, October 28, 2019, October 29, 2019, and October 30, 2019.

33.     Specifically, Plaintiff received the following text messages from Defendant:

    a.  On October 28, 2019 at 10:06 a.m.:

6

Hi Aaron , I received your resume & would like to talk to schedule an interview. Call me at 916-627-8365 Thanks Sue www.hart-group.info/.

b.  On October 28, 2019 at 10:07 a.m.:

Please call me to schedule an interview Call/text directly on my cell at 916-627-8365 Thanks Sue HART-GROUP

c.  On October 28, 2019 at 10:25 a.m.:

Aaron , Please call me to schedule an interview Call/text directly on my cell at 209-407-9723 Thanks Rhianna -HART-GROUP

d.  On October 29, 2019 at 10:05 a.m.:

Aaron , Please call me to schedule an interview Call/text directly on my cell at 916-627-9365.

e.  On October 29, 2019 at 10:06 a.m.:

Please call me to schedule an interview Call/text directly on my cell at 916-627-8365 Thanks Sue-HART-GROUP

f.  On October 29, 2019 at 10:25 a.m.:

Hi Aaron , I received your resume & would like to talk to schedule an interview. Call me at 209-407-972

g.  On October 30, 2019 at 10:05 a.m.:

I received your resume. To schedule an interview please respond with INTERESTED or STOP www.hart-group.info/

34.  In response to the text messages Plaintiff told the Defendant that he did not submit his resume, he was not interested, and asked to be removed from their list, but the text messages continued.  Thus, as early as October 28, 2019 at 10:06 a.m., Defendant knew that Plaintiff did not consent to receive unsolicited text messages from Defendant; however, the unsolicited text messages continued.

*Rosales v. The Hart Group, LLC*
CLASS ACTION COMPLAINT

35.     Plaintiff has never done business with Defendant and has never provided Defendant his phone number or consented to text message calls from Defendant on his mobile telephone.

36.     These unsolicited and promotional text messages placed to Plaintiff's mobile telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1), which had the capacity to produce or store numbers randomly or sequentially, and to place text message calls to Plaintiff's cellular telephone by dialing such numbers.

37.     The unsolicited and promotional text messages placed to Plaintiff's mobile telephone also featured a prerecorded voice as the text messages were pre-populated with uniform text.

38.     The telephone number that Defendant, or its agents, called was assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

39.     These text messages constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

40.     Plaintiff did not provide Defendant or its agents prior express consent to receive unsolicited text messages pursuant to 47 U.S.C. § 227 (b)(1)(A) and/or has revoked any alleged prior express consent.

41.     These text messages by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and on behalf of and all others similarly situated ("the Class").

43.     Plaintiff represents, and is a member of the Class, consisting of all persons within the United States who received any unsolicited, promotional text message from Defendant or its agents on their cellular telephones through the use of

any automatic telephone dialing system as set forth in 47 U.S.C. § 227(b)(1)(A)(3) or featuring prerecorded voice messages, which text messages by Defendant or its agents were not made for emergency purposes or with the recipients' prior express consent, within four years prior to the filing of this Complaint through the date of final approval.

44.     Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the hundreds of thousands, if not more.  Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

45.     Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their cellular telephones by using unsolicited promotional text messages, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of said Plaintiff and the Class members.  Plaintiff and the Class members were damaged thereby.

46.     This suit seeks only statutory damages and injunctive relief for on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

47.     The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court.  The Class can be identified through Defendant's records or Defendant's agents' records.

48.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and

fact to the Class predominate over questions which may affect individual Class members, including the following:

    a.  Whether, within the four years prior to the filing of this Complaint through the date of final approval, Defendant or its agents sent promotional text messages without the recipients' prior express consent (other than a text message made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system, to any telephone number assigned to a cellular telephone service;

    b.  Whether the equipment Defendant, or its agents, used to send the text messages in question was an automatic telephone dialing system as contemplated by the TCPA;

    c.  Whether Defendant, or its agents, systematically sent promotional text messages to persons who did not previously provide Defendant with their prior express consent to receive such text messages;

    d.  Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

    e.  Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

49.    As a person that received at least one unsolicited promotional text message to his cellular telephone without Plaintiff's prior express contest, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interest antagonistic to any member of the Class.

50.    Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant

will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to individually seek legal redress for the wrongs complained of herein.

51.    A class action is a superior method for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

52.    Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT 1

### NEGLIGENT VIOLATIONS OF THE TCPA

### 47 U.S.C. §§ 227 *ET SEQ.*

53.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

54.    Defendant made unauthorized automated text message calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone number of Plaintiff and the other members of the Class without their prior express written consent.

55.    These text message calls were made *en masse* using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.  By using such equipment, Defendant was able to send thousands of text messages simultaneously to thousands of consumers' cellphones without human intervention.  These text messages are analogous to a prerecorded voice made without the prior express consent of the Plaintiff.

56.    The foregoing acts and omissions of Defendant and its agents constitute multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

57.    As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

58.    Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT 2

**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA**

**47 U.S.C. §§ 227 *ET SEQ.***

59.    Plaintiff incorporates by reference paragraphs 1-52 of this Complaint as though fully stated herein.

60.    Defendant made unauthorized automated text message calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone number of Plaintiff and the other members of the Class without their prior express written consent.

61.    These text message calls were made *en masse* using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.  By using such equipment, Defendant was able to send thousands of text messages simultaneously to thousands of consumers' cellphones without human intervention.  These text messages are analogous to a prerecorded voice made without the prior express consent of the Plaintiff.

62.    The foregoing acts and omissions of Defendant constitutes multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq*.

63.    As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

64.    Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

13

1

**PRAYER FOR RELIEF**

2   **Wherefore**, Plaintiff respectfully requests the Court to grant Plaintiff and the Class

3   the following relief against Defendant:

4   FIRST COUNT FOR NEGLIGENT VIOLATION OF THE TCPA

5   47 U.S.C. §§ 227 *ET SEQ.*

6      65.   As a result of Defendant's, and Defendant's agents', negligent

7   violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class

8   member $500.00 in statutory damages, for each and every violation, pursuant to 47

9   U.S.C. § 227(b)(3)(B).

10     66.   Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief

11   prohibiting such conduct in the future.

12

13   SECOND COUNT FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA

14   47 U.S.C. §§ 227 *ET SEQ.*

15     67.   As a result of Defendant's, and Defendant's agents', willful and/or

16   knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each

17   Class member treble damages, as provided by statute, up to $1,500.00 for each and

18   every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

19     68.   Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such

20   conduct in the future.

21                                  * * *

22     69.   Any other relief the Court may deem reasonable, just and proper.

23

24   **JURY DEMAND**

25    Plaintiff hereby demands a trial by jury on all issues so triable.

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendant take affirmative steps to preserve all text messages, recordings, data, emails, documents and all other tangible things that relate to the allegations herein, Plaintiff or the putative class members, or the sending of text messages, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff or the account in question, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials, and notify the undersigned of the circumstances immediately so that counsel may take appropriate action. This demand shall not narrow the scope of any independent document preservation duties of Defendant.

Dated:  January 16, 2020

*s/ Ronald A. Marron*
By: Ronald A. Marron
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
ALEXIS M. WOOD
KAS L. GALLUCCI
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff
and the Proposed Class***

15